IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
                                      ┌─────────────────────────┐
                                      │        FILED            │
                                      │                         │
                                      │     DEC 2 8 2011         │
                                      │                         │
                                      │  CLERK, US DISTRICT COURT│
                                      │       NORFOLK, VA        │
                                      └─────────────────────────┘
```

LAUREN KATZ,

    Plaintiff.

v.

Case No. 2:11cv686

THE AUTO CONNECTION, INC.,
and
MICHAEL WAYNE INVESTMENT CO.,

    Defendants.

        Serve:    **Registered Agent**
                    **R. Edward Bourdon, Jr.**
                    **Sykes, Bourdon, Ahern & Levy, P.C.**
                    **281 Independence Boulevard**
                    **Pembroke One, Fifth Floor**
                    **Virginia Beach, VA 23462**

## COMPLAINT

The Plaintiff, Lauren Katz ("Katz"), by counsel, files this Complaint against the Defendants THE AUTO CONNECTION, INC. and MICHAEL WAYNE INVESTMENT CO. (collectively, "Auto Connection") and in support thereof states as follows:

1.      This is a civil action alleging unlawful discrimination and retaliation in the course of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

## Parties

2.      Katz is an adult, female individual and is currently a citizen and resident of the state of Virginia.

3.      Katz is a former employee of Auto Connection. At all relevant times and at

the time of her discharge, Katz worked at Auto Connection's facilities located in Norfolk, Chesapeake, Newport News and Richmond. At all relevant times, Katz performed her job responsibilities in a satisfactory manner. Katz was an "employee" of Auto Connection within the meaning of 42 U.S.C. § 2000e(f).

4.      The Auto Connection, Inc. and Michael Wayne Investment Co. are related Virginia corporations doing business, among other places, in the cities of Virginia Beach, Norfolk, Newport News and Richmond, Virginia under the name The Auto Connection.

5.      Auto Connection is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

6.      Auto Connection has had more than 200 employees in each of the 20 or more calendar weeks in the current or preceding calendar year.

### Jurisdiction and Venue

7.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

8.      Venue is proper in this district and division under 28 U.S.C. § 1391 and Local Rule 3(C).

9.      This Court has personal jurisdiction over Auto Connection. Auto Connection is a resident of Virginia for purposes of this case.

10.     Katz filed two Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Charge No. 437-2010-00960 was filed on September 24, 2010.   Katz Amended Charge No. 437-2010-00960 to include her charge of discrimination in the form of retaliation on February 28, 2011. A Notice of Suit Rights was issued by the EEOC on September 29, 2011.   Auto Connection had actual and/or

constructive notice of each Charge, and participated in and was represented by an advisor during the EEOC investigative process.

**Background**

11.     Katz was hired by Auto Connection in or about January, 2005. At the time she was terminated, Katz was the Regional Leads Manager.

12.     Beginning in May, 2008, Katz and her supervisor, Michael Hughes ("Hughes"), Regional Operations Manager, had a romantic relationship.

13.     Katz ended the romantic relationship with Hughes in late December, 2008. Hughes sent Katz a text message saying "I miss you." Katz did not respond to the text message. Once Katz stopped returning romantic communications with Hughes, Hughes began cursing and insulting Katz whenever Katz tried to discuss work related matters with Hughes about which Katz was required to report to Hughes.

14.     A few months after Hughes sent Katz the text message saying "I miss you," Katz told Hughes that she did receive the text but that she chose to ignore it because she wanted to end the relationship. Hughes became angry and slammed his phone down and told Katz not to handle referrals because he did not know what her job would be in the future and Hughes instructed Katz not to go anywhere until he determined what Katz's job would be. Later Hughes went into Katz's office and asked her to accompany him to Newport News and stated that they would have everything resolved by the time they returned. Katz told Hughes that she was afraid to accompany him because of his temperamental behavior.

15.     In February, 2009, Katz was in Hughes' office discussing work related matters about which Katz was required to report to Hughes. Hughes became angry with

Katz and stated, "You are lucky you are not Phil (a man) because I would throw you against a wall."

16.    In March, 2009, Katz asked Hughes to stop cursing at and insulting her and told Hughes that his treatment of her was becoming unbearable.  Hughes stated that if Katz could not put up with his behavior then Katz could find somewhere else to work because Hughes was not going anywhere.

17.    Throughout 2009 and 2010, Hughes cursed at and verbally abused Katz when Katz tried to discuss work related matters with Hughes about which Katz was required to report to Hughes such as compliance, sales leads, operations and employees' complaints reported to Katz.

18.    In May, 2010, Katz complained to Mary Leigh Brewer, Controller ("Brewer") about being harassed by Hughes and other work related concerns about compliance and sexual harassment reports of other employees which Katz reported to Hughes as she was required to do, but that Hughes ignored.

19.    In May, 2010, Hughes called Katz on her cell phone while Katz was on medical leave and stated that someone had told Brewer about an employee's, Heather Wiley, complaint of being sexually harassed and asked Katz who would do that.  Katz responded that she had told Brewer because she felt that Hughes ignored issues which Katz brought to his attention as Katz was required to do.  Hughes cursed and screamed at Katz and sent Katz numerous harassing text messages.

20.    On or around July 28, 2010, Katz complained to Angela Higgerson, Human Resources Manager for Auto Connection ("Higgerson"), that she had been harassed by Hughes since ending their romantic relationship.  Katz informed Higgerson that she had

been advised to file a charge of harassment with the EEOC, but she wanted to make an internal complaint in order to give Auto Connection to opportunity to resolve the issue before going to the EEOC. A meeting was scheduled for the next day with Higgerson and Barry Sifen, CEO ("Sifen").

21.    On or around July 29, 2010, Katz met with Higgerson and Sifen. Katz told Sifen about her past relationship with Hughes and his harassment of Katz after she ended the relationship. Sifen asked whether or not Katz had filed a charge of harassment with the EEOC. Katz also told Sifen her concerns pertaining to compliance and other employees' complaints because Katz felt that Hughes had ignored these concerns when Katz reported them to Hughes as she was required to do. Sifen and Higgerson told Katz not to have any more contact with Hughes and to notify Higgerson if Hughes contacted Katz.

22.    Despite Katz's complaints, the harassment by Hughes continued. On or around July 29, 2010, Hughes called and sent text messages to Katz multiple times because he knew that Katz had met with Sifen and Higgerson. Hughes asked Katz what she was doing there (at the location of her meeting with Sifen and Higgerson), what did she tell Sifen and Higgerson, did she tell them "about us" and did she give them proof. Hughes stated that he will kill himself and that he will lose his house, wife, and job.

23.    On July 30, 2010, Wayne Clifton ("Clifton"), President of Auto Connection and long-time friend of Hughes told Katz to report to Clifton from now on instead of Hughes.

24.    On August 4, 2010, Sifen, Higgerson and Clifton met with Katz to discuss all of the issues that Katz had disclosed in her complaint. Clifton stated that he had talked to Hughes about the relationship between Hughes and Katz and that Katz would be reporting

to Clifton from now on.  Higgerson stated that she would follow up with Katz in sixty to ninety days to ask if the harassment and other unaddressed issues had improved.

25.    On August 9, 2010, Higgerson gave Katz a letter in a sealed envelope which stated that Auto Connection had conducted an internal investigation of Katz's complaint. The letter stated, "Unfortunately, we were unable to independently verify your claim that Mr. Hughes has harassed and retaliated against you as a result of terminating your personal relationship[.]"

26.    Higgerson never followed up with Katz regarding her complaint.  Clifton was generally not available to communicate with Katz regarding her job duties.  On information and belief, Hughes was never disciplined.

27.    In addition, Katz's position was marginalized.  Many of her duties were given to other employees, she was left out of meetings that concerned her department, and she was left "out of the loop" by others who communicated directly with Katz's subordinate employees rather than through Katz.

28.    In or about October, 2010, Auto Connection received notice of the EEOC charge of harassment filed by Katz.

29.    December 28, 2011 was the date on which the EEOC mediation conference was to occur but it was postponed due to inclement weather.

30.    On December 30, 2010, Auto Connection terminated Katz in a letter stating, "The Auto Connection has decided to restructure the Leads Department at all locations. As a result of that decision, your position as Leads Manager will be eliminated effective December 30, 2010."

31.    On February 28, 2011, Katz amended her original charge with the EEOC to

include termination in retaliation for making an internal complaint of harassment and for filing a charge with the EEOC.

32.    Katz was informed by Auto Connection that its decision to restructure the Sales Leads Department, and thus eliminate Katz's position, was based on the recommendation of Norris, the independent consultant hired to review the in-bound phone staff.    However, Norris' recommendations to Auto Connection specifically included "Integrating Lauren Katz" in the restructured leads department.  Norris' conclusions about Katz included:

a.    "Lauren (Katz) is an encyclopedia of AMS/Footsteps/Qualifying information (internal operating systems and standards)."

b.    "When Lauren (Katz) has had time, her new trainees are very proficient within 2 weeks."

c.    "Lauren (Katz) is proof that upward mobility and hybrid jobs are available - a motivator to the leads department staff."

d.    "Lauren (Katz) is excellent on phone/closings - great floater."

### Count I: Retaliation in Violation of Title VII

33.    Paragraphs 1-32 are incorporated herein by reference.

34.    Auto Connection, through its supervisory employees, agents and managers, discriminated against Katz in retaliation for her complaining of harassment because of her sex, female, by her supervisor.

35.    Katz's complaining of sexual harassment was a protected action under Title VII.

36.    Katz suffered several adverse employment actions in retaliation for her

complaints, including continued harassment and marginalization of her position.

37.     Auto Connection's retaliatory actions and termination of Katz were done wilfully, with malice and with reckless indifference to Katz's federally protected rights.

38.     As a direct and proximate result of Auto Connection's retaliation, Katz has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses and other injury.

## Count II: Retaliation in Violation of Title VII

39.     Paragraphs 1-38 are incorporated herein by reference.

40.     Auto Connection, through its supervisory employees, agents and managers, discriminated against and terminated Katz in retaliation for her filing a Charge against Auto Connection with the EEOC.

41.     Katz's filing of a charge with the EEOC was a protected action under Title VII.

42.     Katz was terminated in retaliation for her filing of the EEOC charge. Auto Connection's stated reason for her termination was a mere pretext.

43.     Auto Connection's retaliatory action against Katz was done wilfully, with malice and with reckless indifference to Katz's federally protected rights.

44.     As a direct and proximate result of Auto Connection's retaliation, Katz has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses and other injury.

WHEREFORE, Katz requests that the Court enter judgment in her favor and grant the following relief:

A.    Award Katz compensatory and punitive damages in the amount of $200,000 for Counts I and II;

B.    Award Katz her lost wages, salary, benefits, including backpay and frontpay, plus interest;

C.    Award Katz her attorney's fees and costs pursuant to Title VII; and

D.    Award such other relief as may be appropriate to the nature of this case.

**PLAINTIFF REQUESTS A JURY TRIAL**

LAUREN KATZ

By: _____
Of Counsel

Andrew M. Hendrick, Esquire
VSB #42852
Kendall D. Rasberry, Esquire
VSB#76675
SHUTTLEWORTH, RULOFF, SWAIN,
   HADDAD & MORECOCK, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, VA 23452
757-671-6000
757-671-6004 (fax)
ahendrick@srgslaw.com
krasberry@srgslaw.com
*Counsel for the Plaintiff*